IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| BOARD OF EDUCATION OF ) <br> MAHOMET-SEYMOUR COMMUNITY ) <br> SCHOOL DISTRICT NO. 3, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> S.W. and K.W., individually and as parents and ) <br> next friends of D.W., a minor, and the ) <br> ILLINOIS STATE BOARD OF ) <br> EDUCATION ) | Case No. 2:18-cv-2146 <br><br> Judge |

## COMPLAINT

Plaintiff, the Board of Education of Mahomet-Seymour Community School District No. 3 (District or Plaintiff), by and through undersigned counsel, states the following in its complaint against Defendants, the Illinois State Board of Education and S.W. and K.W., individually and as parents and next friends of D.W., a minor:

### INTRODUCTION

1. The District brings this action for administrative review under the Individuals with Disabilities Education Improvement Act (IDEA), 20 U.S.C. § 1401; 34 C.F.R. § 300.500 *et seq.* It seeks reversal of the Hearing Officer's decision and order following a due process hearing.

### JURISDICTION AND VENUE

2. This Court has jurisdiction over this action pursuant to 28. U.S.C. § 1331, as the claims for administrative review arise under the IDEA, 20 U.S.C. § 1401 *et seq.* and its implementing regulations, 34 C.F.R. § 300.500 *et seq.*

3. Venue is proper pursuant to 28 U.S.C. § 1391(b), because the parties reside in this judicial district and the events giving rise to the claim for relief occurred in this judicial district.

## PARTIES

4. The District, headquartered in Mahomet, IL, is a public school district organized under and operating pursuant to the Illinois School Code (105 ILCS 5/1-1 *et seq.*). The Board of Education is the governing body of the District and is responsible for maintaining the schools within the District's jurisdiction, as well as the education of students in the District.

5. Defendants S.W. and K.W. are residents of Champaign County, Illinois, and are the parents and legal guardians of D.W., a minor.

6. Defendant, the Illinois State Board of Education (ISBE), headquartered in Springfield, Illinois, is an Illinois state agency responsible for the general oversight and administration of all public schools in the State of Illinois. It is also the agency responsible for implementing IDEA in the State of Illinois.

## FACTUAL BACKGROUND

7. D.W. is a third grade student who attends his home school, Lincoln Trail Elementary School in Mahomet, Illinois.

8. D.W. has ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

9. D.W. is eligible for special education services pursuant to IDEA and has an Individualized Education Program (IEP).

10. Pursuant to his IEP, special education services, supports, and accommodations have been made available to D.W. while he has been placed in the general education classroom.

11. Despite the provision of the services and supports set forth in D.W.'s IEP, his behaviors escalated in the 2016-2017 school year when he was a second-grade student.

12. Such changes in behavior included extreme frustration, high anxiety, growling at teachers, mood swings, and being unable to interact with peers.

13. D.W. was suspended multiple times throughout for aggressive behaviors such as kicking and biting his classroom teacher, biting the principal, throwing a chair, throwing items across the room, flipping furniture, picking and pinching his teacher to the point of breaking skin, and hitting the teacher with a trash can.

14. District staff had to remove other students in D.W.'s classroom from the classroom multiple times due to his extreme behavior.

15. D.W. injured students and staff members on repeated occasions due to his aggressive outbursts.

16. The District convened multiple meetings with D.W.'s parents throughout the course of the 2016-2017 school year to discuss his escalating behaviors.

17. At those meetings, District staff proposed a number of behavioral supports that were implemented.

18. Despite the supports that the District put in place, D.W. engaged in a serious behavioral incident on March 31, 2017.

19. Specifically, on that day, D.W. gave his teacher the middle finger and picked up two rocks off of the floor and threw them at her.

20. As a result of this incident, D.W. was suspended from school.

21. On April 17, 2017, D.W.'s IEP team convened a manifestation determination review ("MDR") to address this incident and discuss whether it was a manifestation of D.W.'s disability.

22. The IEP team determined that the behavior was a manifestation of D.W.'s disability, meaning that it was caused by or substantially related to his disabling conditions.

23. The IEP team recommended placing D.W. in an interim alternative educational setting ("IAES") for 45 days for use of a weapon, i.e., the rocks, at the Pavilion Foundation School ("Pavilion"), a State-approved private therapeutic day school located in Champaign, Illinois.

24. The District proposed Pavilion as a placement option because it would provide D.W. with intensive services in a therapeutic milieu, including additional social emotional support that D.W. desperately needs, and he was not functioning in the general education classroom.

25. D.W.'s Parents thought Pavilion was too restrictive and refused to send D.W.

26. As a result, D.W. was not in school during April and May 2017.

27. D.W. returned to school for his third-grade school year.

28. During his third-grade school year, D.W. exhibited similarly extreme behaviors.

29. His behavior intervention plan ("BIP") from the current school year provides that his target behaviors include: refusal to complete tasks, biting, hitting, kicking, pinching, spitting, throwing objects, and a combination of these aggressive behaviors, including non-compliance and using language such as "asshole" and "mother fucker" during class.

30. On September 1, 2017, D.W. swung his backpack at his case manager, flipped her off, swung at the behavior interventionist, and kicked the school social worker.

31. In light of these dangerous behaviors and out of concern for the safety of other students and staff, D.W. was suspended from school on September 1, 2017.

32. The District members of D.W.'s IEP team changed D.W.'s placement to Pavilion once again.

33. Parents filed a due process request disputing this placement decision.

34. Parents had previously filed an expedited due process hearing request.

35. As part of her decision in the expedited matter, the hearing officer ordered that an independent functional behavioral analysis be completed for D.W., which was completed.

36. A second hearing was held on December 11, December 12, December 13, December 18, 2017 and January 11, 2018.

37. At issue at the second hearing were the following issues: whether the District failed to implement D.W.'s May 18, 2016 IEP, from September 2016 to March 2017; whether D.W.'s challenging behaviors required an appropriately trained and experienced 1:1 aide to assist in managing those behaviors from February 2017 through the present and if so, whether the District failed to provide the required 1:1 aide; whether D.W.'s behaviors clearly impeded his learning since February 2017 and if so, whether the District failed to complete a Functional Behavioral Assessment ("FBA") to address those behaviors; and whether the recommended supports identified in the June 20, 2017 independent neuropsychological evaluation are necessary for D.W. to participate in the recommended LRE and if so, whether the District failed to develop an IEP on August 10, 2017 that included those necessary supports.

38. As relief, Parents requested the following: that D.W. be returned to his stay-put placement in the May 18, 2016 IEP or place him in a co-taught third grade classroom in his home school with a 1:1 aide trained in applied behavior analysis ("ABA") and with experience in working with students with developmental delays and aggressive behaviors and small group reading instruction. Parents also requested that D.W.'s eligibility for special education services be changed.

39. The hearing officer rendered a decision on the second hearing on January 29, 2018.

40. The hearing officer determined that the District denied D.W. a free appropriate public education and ordered the following: that the District convene an IEP meeting within 10 school days of receipt of the Order and change D.W.'s eligibility, include academic recommendations and accommodations presented by the Parents' private evaluators, and include supports described by the independent behavior analyst.

41. The hearing officer further ordered that a Noncontingent Reinforcement ("NCR") program be supervised by a Board Certified Behavior Analyst ("BCBA") and that the District hire a behavior therapist who will work directly with D.W. in the NCR environment.

42. With regard to the 1:1 aide that was provided to D.W., the hearing officer determined that the District failed to provide a trained and experienced aide to assist in managing the student's very difficult behaviors.

43. The hearing officer further determined that the District failed to complete a new Functional Behavioral Assessment ("FBA") to address D.W.'s serious behaviors.

44. The hearing officer relied in large part on the recommendation of the evaluator who conducted the independent functional behavioral assessment that was ordered following the first hearing in determining that D.W. should be placed in the general education classroom and provided with NCR.

45. Additionally, the hearing officer ordered that the District and Parents discuss the parameters of when restraint could be used and that this information be memorialized in the IEP and that the District provide protective gear for staff.

46. Finally, the hearing officer ordered that when D.W. is ready to move slowly from the NCR program, the IEP team convene to plan his educational program in conjunction with the behavioral therapist and supervisor.

47. D.W. has been in his general education classroom since the decision was rendered.

48. D.W. continues to engage in extreme and aggressive behaviors.

49. Most recently, on Wednesday, May 23, 2018, D.W. aggressively knocked a desk into his two NCR line therapists and then forcefully kicked the desk into one therapist's head.

50. It took two adults to hold D.W.

51. D.W. then forcefully spit on and slammed his body into the two line therapists.

52. The District continues to believe that D.W. requires a more restrictive placement that will provide him with a therapeutic milieu and the increased social emotional support that he requires in order to receive a free appropriate public education.

## COUNT I

### Administrative Review of the Hearing Officer's Decision

53. The District incorporates and restates Paragraphs 1 through 52 above, as though fully set forth herein.

54. Pursuant to IDEA and Federal Regulations, a free appropriate public education must be available to eligible students. 34 C.F.R. § 300.101.

55. With regard to educational placement decisions for eligible students, the placement decision must be made by a team of individuals who knows the students and in conformity with the least restrictive environment provisions of IDEA. 34 C.F.R. § 300.116.

56. The least restrictive environment ("LRE") provisions of IDEA provide that to the maximum extent appropriate, children with disabilities be educated with their nondisabled peers. 34 C.F.R. § 300.114(a)(2)(i).

57. This provision further provides that "special classes, separate schooling, or other removal of children with disabilities from the regular education environment occurs only if the

nature or severity of the disability is such that education in regular classes with supplementary aids and services cannot be achieved satisfactorily." 34 C.F.R. § 300.114(a)(2)(ii).

58. In reaching her determination that D.W. should continue in the general education environment with support, the hearing officer did not use the correct standard for determining whether he would receive a FAPE in the general education environment.

59. In support of her claim that D.W.'s LRE is the general education classroom, the hearing officer relied in large part on the recommendation of Dr. Falcomata who completed a functional behavioral assessment of D.W.

60. Dr. Falcomata recommended that D.W. receive NCR in the school environment, a recommendation that the District strongly disputed could be safely implemented in a third-grade school classroom.

61. It is the District's position that the use of NCR in the classroom is not appropriate in the school setting.

62. Notwithstanding this concern, the hearing officer determined that the NCR must be implemented and would address D.W.'s behavioral needs in his least restrictive environment.

63. In reaching this determination, the hearing officer completely ignored testimony regarding the severity of D.W.'s behavior.

64. The hearing officer further ignored the steps the District had taken to accommodate D.W. in regular education and the fact that that he was not receiving benefits in that environment and was also affecting the classroom environment as a whole. *Daniel R.R. v State Bd. of Educ.*, 874 F.2d 1036, 1048-50 (5th Cir. 1989); *Beth B. v. Van Clay*, 211 F.Supp.2d 1020, 1030 (N.D. Ill. 2001).

65. The hearing officer inappropriate determined that D.W. had been receiving and will receive a FAPE in his LRE in the general education classroom.

Wherefore, Plaintiff, the Board of Education of Mahomet-Seymour Community Unit School District 3 enter a judgment in its favor with respect to this Count and provide the following relief:

   a. Receive and review the records of the administrative proceedings from the Illinois State Board of Education;

   b. Hear additional evidence from the District, as provided for in Section 1415(i)(C)(ii) of IDEA;

   c. Reverse the Hearing Officer's decision and order;

   d. Enter an order finding, based on the preponderance of the evidence, that maintain D.W.'s current placement will deny him a FAPE;

   e. Award other relief that the Court deems appropriate.

Respectfully submitted,

By:   /s/ Darcy Kriha
_____
Attorney for District
Darcy Kriha

Darcy Kriha
ARDC No. 6210325
Kriha Law, LLC
2 Transam Plaza, Suite 450
Oakbrook Terrace, IL 60181
(708) 921-3410
darcy@krihalaw.com